# In the United States Court of Federal Claims

No. 10-15L
(Filed: April 10, 2017)

| | |
|---|---|
| ROSALIE GREENWOOD, *et al.*, Individually and as Representatives of a Class of Similarly Situated Individuals, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

Rails-to-Trails; Class Action; Final Approval of Settlement Agreement; Attorneys' Fees and Costs; Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) ("URA"); Partial Final Judgment; RCFC 54(b)

*Steven M. Wald*, St. Louis, MO, for plaintiffs.  *Michael J. Smith* and *J. Robert Sears*, St. Louis, MO, and *Thomas S. Stewart* and *Elizabeth G. McCulley*, Kansas City, MO, of counsel.

*Sean C. Duffy*, Natural Resources Section, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, with whom was *Jeffrey H. Wood*, Acting Assistant Attorney General, for defendant.

**ORDER GRANTING FINAL APPROVAL OF PARTIES' PROPOSED SETTLEMENT AND GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Pending before the court in this rails-to-trails class action are the parties' request for final approval of the proposed settlement agreement pursuant to Rule 23(e) of the Rules of the United States Court of Federal Claims ("RCFC"), and plaintiffs' motion for attorneys' fees and costs under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) ("URA").  The court held a

telephonic fairness hearing in this matter on March 24, 2017 at which 6 plaintiffs were on the call.  During the hearing none of the plaintiffs spoke in opposition to the settlement nor had any plaintiffs filed objections to the settlement.[1]

With regard to the parties' request for final approval of the proposed settlement agreement, the court finds for the reasons discussed below that the proposed settlement agreement is fair, reasonable, and adequate and warrants approval.

With regard to plaintiffs' motion for attorneys' fees and costs, the court for the reasons discussed below grants-in-part and denies-in-part plaintiffs' request.  In this connection, the court also finds for the reasons discussed below that it may resolve plaintiffs' motion for attorneys' fees and costs without providing plaintiffs with any additional notice.  As discussed further below, the court finds that the notice sent to plaintiffs regarding the settlement and request for fees met the requirements of RCFC 23(h).  RCFC 23(h)(1) states that "[n]otice of the motion [for attorneys' fees and costs in a certified class action] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."

Accordingly, the parties' proposed settlement is **APPROVED** and plaintiffs' motion for fees and costs is **GRANTED-IN-PART** and **DENIED-IN-PART**.

---

[1] As discussed *infra*, the court received one comment to the effect that the plaintiff's property had increased in value since the date of the taking, but the comment did not object to the settlement amount based on the valuation as of the date of the taking.

## I.      BACKGROUND AND PROCEDURAL HISTORY

This rails-to-trails case arises from the conversion of a railroad corridor in

Lawrence County, Arkansas to a recreational trail.  This action was brought on behalf of

53 landowners who collectively own 78 parcels of land along the 6.70-mile corridor.  On

March 5, 2013, upon agreement of the parties, the court certified this matter as a class

action and adopted the parties' proposed schedule for providing notice to class members

and preparation of a claims book (ECF No. 30).  Thereafter, the parties engaged in

extensive discovery and settlement discussions.

The parties retained an expert real estate appraiser, Sara W. Stephens, CRE, MAI,

who assisted in valuing the easements so that the parties could negotiate a compromise

settlement of all of the claims.  Pls.' Mot. for Prelim. Approval of Settlement, Approval

of Notice to Class Members Regarding Proposed Class Action Settlement, and Req. to

Set Date for Public Hr'g under RCFC 23(e) at 2-3 ("Pls.' Mot. for Prelim. Approval")

(ECF No. 81); Def.'s Resp. to Pls.' Mot. for Prelim. Approval 2 (ECF No. 82); Joint

Status Report filed Nov. 5, 2013 (ECF No. 35).  The parties instructed Ms. Stephens to

estimate the fair market value of representative parcels in their condition before and after

the Notice of Interim Trail Use was issued.  Pls.' Mot. for Prelim. Approval 3; Def.'s

Resp. to Pls.' Mot. for Prelim. Approval 2.  In the "before" condition, the parcels were

valued as unburdened by an easement, and in the "after" condition the parcels were

valued subject to an easement for recreational trail use, with the possibility of future

reactivation of rail service.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot.

for Prelim. Approval 2.  The parties asked Ms. Stephens to prepare the appraisals in

conformance with the Uniform Standards of Professional Appraisal Practice and the Uniform Appraisal Standards for Federal Land Acquisitions.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 2.  The parties also asked Ms. Stephens to assist in identifying representative parcels.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 2.

Counsel for the parties and Ms. Stephens conducted a site visit on February 20, 2014.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 2; Joint Status Report filed Mar. 24, 2014 (ECF No. 38).  During the site visit, counsel for the parties and Ms. Stephens inspected the length of the corridor, and viewed all of the properties at issue in this case.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 2.  In addition, class counsel called attention to unique parcels and legal and factual issues that class counsel believed should be addressed in the appraisal process.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 2.  Ms. Stephens subsequently returned to view the properties at issue without counsel present.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 2.

The parties agreed to group similarly situated properties into seven categories based upon location, highest and best use, and other characteristics.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 3.  These included three residential categories, three commercial/industrial categories, and one agricultural category.  Pls.' Mot. for Prelim. Approval 3; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 3.  The parties and Ms. Stephens selected a representative parcel from each of

the seven categories and Ms. Stephens prepared and provided an appraisal report for each

representative parcel in August to October 2014.  Pls.' Mot. for Prelim. Approval 3-4;

Def.'s Resp. to Pls.' Mot. for Prelim. Approval 3.  The parties reviewed and analyzed the

appraisal reports and agreed to use those appraisals for settlement purposes.  Pls.' Mot.

for Prelim. Approval 4; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 3.

The parties also retained a mapping expert to measure the frontage for each of the

parcels along the corridor to calculate the area of land allegedly taken.  Pls.' Mot. for

Prelim. Approval 4; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 3; Joint Status Report

filed Mar. 24, 2014 (ECF No. 38).  The frontage measurements were provided to the

parties and Ms. Stephens.  Pls.' Mot. for Prelim. Approval 4; Def.'s Resp. to Pls.' Mot.

for Prelim. Approval 3.  The appraised values of the representative parcels were applied

to the remaining parcels using the frontage measurements to estimate the value of the

easement allegedly taken from the remaining properties in each category.  Pls.' Mot. for

Prelim. Approval 4; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 3.

Class counsel on October 26, 2016 mailed a letter to each class member informing

each class member of the proposed settlement agreement and class counsel's motion for

URA fees.  Pls.' Mot. for Prelim. Approval 7.

Thereafter, on December 1, 2016, class counsel filed a motion for preliminary

approval of the settlement, approval of notice to class members regarding the proposed

class action settlement, and request for a public hearing under RCFC 23(e) (ECF No. 81).

The parties' proposed settlement agreement was filed with the court on December 1,

2016.  Pls.' Mot. for Prelim. Approval Ex. B (ECF No. 81-2).  Under the settlement, class

members would receive a total of $1,025,595.00, of which $611,795.00 is principal for

the value of the land allegedly taken and $413,800.00 is interest as of August 31, 2016.

Pls.' Mot. for Prelim. Approval Ex. B ¶ 4.  The amount of principal to be paid for each

claim was set forth in Attachment A to the proposed settlement agreement and attached to

plaintiffs' motion.  Pls.' Mot. for Prelim. Approval Ex. B Attach. A. The government did

not oppose preliminary approval of the class action settlement but asked the court to

adopt different notice and forms than proposed by plaintiffs' counsel (ECF No. 82).

On January 25, 2017, the court granted preliminary approval of the parties'

proposed settlement and scheduled a public fairness hearing for March 24, 2017 (ECF

No. 86).  With regard to the dispute over the notice and forms to be sent to the plaintiffs,

the court rejected the government's request that class counsel create a website for 53

plaintiffs to review the parties' settlement methodology and motion for fees and costs.

Instead, the court approved a notice that informed the plaintiffs of the terms of the

settlement and provided them with the right and information needed to request copies of

all relevant materials, including the motion for attorneys' fees, from class counsel.  In

nearly all other respects, the court adopted the government's proposed notice.  The court

determined that this approach satisfied the requirements of RCFC 23.  The various notice

provisions in the letter to be sent to plaintiffs stated as follows:

> **You may request additional information regarding the proposed
> settlement from Class Counsel, including**: a copy of the representative
> appraisals applicable to the claims of class members, a spreadsheet
> identifying the properties in each appraisal group and the class member's
> property and showing how the value of each property in that group was
> extrapolated or derived from the appraisal of the representative parcels, a

copy of the proposed Settlement Agreement, and **the Parties' filings on Class Counsel's motion for attorney's fees**.

ECF No. 87-1 at 2 (emphasis added).

The notice also specifically informed class members of their right to attend the March 24, 2017 fairness hearing and comment on the pending settlement and motion for attorneys' fees and costs.  The notice stated:

> Members of the class, as well as members of the public, are invited to attend and participate in person or by telephone, in a public hearing on **Friday, March 24, 2017 at 1:00 PM central time (2:00 PM eastern time)** before the Honorable Nancy B. Firestone, United States Court of Federal Claims Judge.
>
> . . .
>
> Any member of the class who would like an opportunity to comment on the proposed settlement or Class Counsel's motion for an award of attorney's fees at the hearing must advise the Court in writing at the address listed below by **March 6, 2017**.

*Id.* at 2-3 (emphasis in original).

Under a section titled "**ATTORNEY'S FEES**," the notice to class members further stated:

> The Court will make a separate determination regarding the reimbursement of your attorney's fees and costs. Because you will not pay any costs, Class Counsel will retain the reimbursement for costs which they have incurred as out-of-pocket expenses in this litigation. Class Counsel has requested that the Court award it reasonable fees pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(a) ("URA"). The United States has agreed to reimburse the class for URA fees.
>
> **Your legal rights are affected whether you act or do not act. Read this notice carefully. If you do not take the opportunity to object to the proposed settlement either in writing or during the forthcoming hearing, you may be deemed to have waived your right to later object**

**and to appeal from any court order approving the settlement and/or from any judgment that may be entered in this case.**

**You may obtain a copy of the proposed Settlement Agreement and the Parties' filings on Class Counsel's motion for attorney's fees by requesting a copy from Class Counsel. These requests may be made by calling Class Counsel at 1-314-720-0220 or sending an email to Class Counsel at wald@swm.legal.**

*Id.* at 3 (emphasis in original).

Under a section titled "**YOUR LEGAL RIGHTS AND OPTIONS IN THIS CLASS ACTION**," the notice informed class members that they were not required to take any additional action as a class member at the time but "[a]s a member of the Class, you may approve of, object to, or comment on the proposed settlement and Class Counsel's request for fees."  *Id.* at 4.

With regard to requesting additional information, the notice reiterated that:

This notice is intended to provide you with general information about the proposed settlement of this class action. You may request additional information about the terms of the proposed settlement, including information about how the settlement amount for your claim was determined, **or information concerning Class Counsel's request for fees**, by contacting Class Counsel, Steven M. Wald of the law firm Stewart, Wald & McCulley by telephone at 1-314-720-0220 or by sending an email to wald@swm.legal.

*Id.* (emphasis added).

For class members who might want to participate in the fairness hearing, the notice stated:

As a class member, if you choose to provide written comments, you may (but are not required to) ask to speak in Court about the fairness of the proposed Settlement Agreement and Class Counsel's request for fees. The space to request such permission is included in section "C" of the attached form. All forms must be sent to the address listed

above and postmarked or faxed to the fax number listed above by
March 6, 2017.

*Id.* (emphasis removed).

Accompanying the notice for each class member were (1) a disclosure
statement, and (2) a form titled "**INDIVIDUAL CLASS MEMBER'S
COMMENTS ON PROPOSED SETTLEMENT, CLASS COUNSEL'S
REQUEST FOR ATTORNEY'S FEES AND/OR REQUEST TO ADDRESS
THE COURT AT PUBLIC HEARING.**" *Id.* at 5-6.  The form offered class
members (a) the option of approving or rejecting the proposed settlement and
requesting to appear at the fairness hearing, (b) a space to provide "**COMMENTS
/ OBJECTIONS ON THE PROPOSED SETTLEMENT OR CLASS
COUNSEL'S REQUEST FOR FEES**," and (c) the option of requesting to speak
at the fairness hearing.  *Id.* at 6-7.  A note regarding this space for comments on
the form explained:

> If you do not intend to appear at the hearing to state your objections
> on the record, you must submit specific objections in writing, or risk
> waiving those objections for the purposes of an appeal. Attach
> additional sheets setting forth your comments/objections if needed.

*Id.*

As noted, the court held a hearing on March 24, 2017. The court
received 40 notices of approval and 1 comment.  The comment, as noted in
footnote 1, related to the timing of the valuation of the property and was
discussed at the hearing.  None of the 6 plaintiffs who participated at the
hearing made any comments.  Only the government raised an issue at the

hearing concerning the adequacy of the notice with regard to plaintiffs'

motion for attorneys' fees and costs under RCFC 23(h) which the court has

rejected.

## II.   DISCUSSION

### A.   The Settlement Agreement is Fair, Reasonable, and Adequate

Under RCFC 23(e), "[t]he claims, issues, or defenses of a certified class may be

settled, voluntarily dismissed, or compromised only with the court's approval."  The

court may approve a proposed settlement "only after a hearing and on finding that it is

fair, reasonable, and adequate."  RCFC 23(e)(2); *see also Haggart v. Woodley*, 809 F.3d

1336, 1348-49 (Fed. Cir. 2016), *cert. denied*, 136 S. Ct. 2509 (2016).  The court has

discretion to accept or reject a proposed settlement, but it may not alter the proposed

settlement, nor may it decide the merits of the case or resolve unsettled legal questions.

*Adams v. United States*, 107 Fed. Cl. 74, 75-76 (2012) (citing *Evans v. Jeff D.*, 475 U.S.

717, 726-27 (1986); *Nat'l Treasury Emps. Union v. United States*, 54 Fed. Cl. 791, 797

(2002)).

There is no definitive list of factors that the court must apply in considering a class

action settlement.  *Raulerson v. United States*, 108 Fed. Cl. 675, 677 (2013).  However,

in determining whether a settlement agreement is "fair, reasonable, and adequate," courts

have found the following factors instructive:

> 1. The relative strengths of plaintiff's case compared to the proposed
>    settlement;

2. The recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsel's representation of the class;

3. The reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms;

4. The fairness of the settlement to the entire class;

5. The fairness of the provision for attorney fees; and

6. The ability of the defendants to withstand a greater judgment, taking into account whether the defendant is a governmental actor or private entity.

*E.g.*, *Sabo v. United States*, 102 Fed. Cl. 619, 627 (2011) (quotation marks and citation omitted).

As discussed in the court's January 25, 2017 order granting preliminary approval of the proposed settlement agreement (ECF No. 86), the court does not find any evidence of collusive activity, preferential treatment, or other deficiencies in the proposed settlement.  In this case, in reaching the proposed settlement agreement, the parties conducted discovery, a thorough joint appraisal of the fair market value of class members' property interests for the alleged taking, and negotiations indicating no preferential treatment or other deficiencies.  Pls.' Mot. for Prelim. Approval 2-4; Def.'s Resp. to Pls.' Mot. for Prelim. Approval 2-3.

In addition, consistent with the Federal Circuit's decision in *Haggart*, 809 F.3d at 1359, the proposed agreement does not provide for plaintiffs' attorneys' fees to be paid out of the settlement proceeds under the "common fund" doctrine.  *See also Sabo*, 102

Fed. Cl. at 630; *Barnes v. United States*, No. 04-1335C, 2010 WL 1904503, at *2 (Fed. Cl. May 7, 2010).

The court received forms approving the settlement from 40 of the 53 claimants. *See* Notice of Class Members Responses 1 (ECF No. 94, filed Mar. 17, 2017).  As noted, only one class member, WRW Oil Co., Inc., through its president Douglas Wayland, commented on the settlement agreement.  Mr. Wayland wrote: "The land was apprais[e]d in 2004, land has taken a large jump in the last 13 years." *Id.* Ex. A at 77-78.  Mr. Wayland was a participant at the March 24, 2017 fairness hearing but did not speak.  The court has considered WRW Oil's comment and finds that it does not suggest that the settlement is unfair, unreasonable, or inadequate.  Although WRW Oil might well be correct that the property taken has increased in value, as counsel discussed at the hearing, WRW Oil is entitled to compensation based on the property's value at the date of the taking and will receive an amount that is commensurate with the value at that time.  *See, e.g.*, *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2432 (2015) ("The Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking." (citation omitted)).

In view of the foregoing, the court finds that the parties' settlement agreement is fair, reasonable, and adequate and warrants approval.

### B.    Attorneys' Fees and Costs

RCFC 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

The URA, 42 U.S.C. § 4654(c), provides that:

The court rendering a judgment for the plaintiff in a proceeding brought
under section 1346(a)(2) or 1491 of Title 28, awarding compensation for
the taking of property by a Federal agency, or the Attorney General
effecting a settlement of any such proceeding, shall determine and award or
allow to such plaintiff, as a part of such judgment or settlement, such sum
as will in the opinion of the court or the Attorney General reimburse such
plaintiff for his reasonable costs, disbursements, and expenses, including
reasonable attorney, appraisal, and engineering fees, actually incurred
because of such proceeding.

The Federal Circuit has found that under a fee-shifting statute such as the URA,

"the court calculates awards for attorney fees using the 'lodestar method' which is 'the

product of reasonable hours times a reasonable rate.'"  *Haggart*, 809 F.3d at 1355

(quoting *City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992)).  "A fee award that is

determined through the use of a lodestar calculation carries a 'strong presumption' that it

represents a 'reasonable' attorney fee."  *Biery v. United States*, 818 F.3d 704, 710 (Fed.

Cir. 2016), *cert. denied*, 137 S. Ct. 389 (2016) (quoting *Bywaters v. United States*, 670

F.3d 1221, 1229 (Fed. Cir. 2012)).  "Departures from the lodestar figure, once calculated,

must be supported by 'specific evidence' justifying the award."  *Id.* (quoting *Perdue v.

Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).  "Ultimately, a fee award must 'be

adequate to attract competent counsel,' but must not "produce windfalls to attorneys.'"

*Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 444 (1983)).

### 1.    Rates

Plaintiffs argue that they are entitled to reasonable compensation for class counsel

at hourly rates of up to $475 for partners, $275 for associates, and $150-$175 for

paralegals.  Plaintiffs argue that this court has approved the requested rates as reasonable

in other recent rails-to-trails class actions.  *See Thomas v. United States*, No. 10-459L, 2014 WL 1347221, at \*4 (Fed. Cl. Apr. 4, 2014) (awarding fees based on an hourly rate of $475 for Steven M. Wald and J. Robert Sears for work performed from 2009 through 2013); *Adkins v. United States*, No. 09-503L (Opinion on Fees and Costs, ECF No. 140, filed Jan. 30, 2014) (awarding fees based on hourly rates of $475 for Thomas S. Stewart and $375 for Elizabeth G. McCulley for work performed from 2009 through 2013); *Gregory v. United States*, 110 Fed. Cl. 400, 406 (2013) (awarding fees based on hourly rates of $475 for Mr. Stewart and other partners, and $375 for Ms. McCulley "to reflect her transition from associate to partner," for work performed from 2009 through 2013). Plaintiffs also provide several affidavits from attorneys who state that they have personal knowledge and experience concerning prevailing billable hour rates or complex commercial litigation in Kansas City and St. Louis and that class counsel's requested rates are reasonable.  *See* Pls.' Fees Mot. Exs. C-G (ECF No. 76).

Plaintiffs acknowledge that in contingent fee agreements between class counsel and 4 of the 53 class members, signed in 2009 and 2010, the class members agreed to pay the greater of (a) 35% of the "gross settlement or verdict," or (b) "statutory attorneys' fees as determined by the appropriate court and to be paid by the United States, which [the class members] understand and agree to be $375 per hour for [Partners], $350 per hour for Of Counsel attorneys, $225 to $275 per hour for associate attorneys, and $150 per hour for paralegals."  Def.'s Resp. to Pls.' Fees Mot. Ex. 1 at 2-5 (ECF No. 83).  The agreements further state that the class members "understand the statutory attorneys' fees are based on the Law Firm's hourly rate."  *Id.*  Plaintiffs argue that these rates are not

14

binding on the court on the grounds that the agreements expressly state that statutory

attorneys' fees will be "determined by the appropriate court" and in any case are only one

factor the court may consider in determining whether a fee is reasonable.  *See Bywaters*,

670 F.3d at 1231.

      The government argues that plaintiffs should not be permitted to collect fees from

the United States at higher rates than class counsel would have collected from its clients

and thus the rates stated in the contingent fee agreements should serve as a ceiling for the

hourly rates class counsel may be permitted to collect in this case.  The government also

argues that plaintiffs' requested rates above $375 per hour are unreasonable as they are

higher than rates awarded in other fee-shifting matters in the same location and

timeframe for attorneys with comparable experience.

      The court has examined plaintiffs' affidavits and the attorneys' fee award cases

plaintiffs cite in support of the claimed rates and finds that the work of class counsel on

this rails to trails case from 2009 to 2010 should be reimbursed at the rates stated in class

counsel's contingent fee agreements with class members and at the requested rates for

later years.  Plaintiffs are correct that the court is not bound by the fees quoted in the

contingent fee agreements but may consider those rates.  In *Bywaters*, 670 F.3d at 1231,

the Federal Circuit found that a "fee agreement between [class members] and their

counsel . . . is not a proper basis for reducing the lodestar figure, though it may be taken

into account in the lodestar calculation."  *Id.*  The Federal Circuit and the Supreme Court

have noted that contingent-fee agreements may "aid in determining reasonableness,"

even if "such an agreement does not impose an 'automatic ceiling' on an award of

attorneys' fees." *Id.* at 1232 n.7 (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)).  The court finds that the contingent fee rate represented a reasonable rate when this litigation was first initiated in 2009 on the grounds that the contingent fee agreements state that the rates are based on the law firm's then current billing rates.

At the beginning of the litigation, when the agreements were signed, in 2009 and 2010, the quoted rates were consistent with partner, associate, and paralegal rates for Kansas City and St. Louis firms and those rates will be used to guide the court.  Thus, for 2009 and 2010, the rates for plaintiffs' attorneys' fee award is $375 per hour for partners, $275 per hour for associates, and $150 per hour for paralegals.

The court is persuaded by plaintiffs that the fees they seek for 2011 and later years are reasonable and consistent with fee awards in comparable cases for attorneys in and around Kansas City and St. Louis.  *See Tussey v. ABB, Inc.*, 746 F.3d 327, 340-41 (8th Cir. 2014) (affirming award of attorneys' fees at "blended rate" of $514.60 per hour for partners and associates in ERISA action); *Betton v. St. Louis Cty., Mo.*, 405 F. App'x 101 (8th Cir. 2010) (per curiam) (affirming award of attorneys' fees at $450 per hour for partners in Missouri Human Rights Act case); *Exec. Affiliates, Inc. v. AAF-McQuay, Inc.*, No. 4:12-CV-175-CEJ, 2013 WL 6571595, at *3 (E.D. Mo. Dec. 13, 2013) (awarding attorneys' fees at $450 per hour for partner in tort case); *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:11-CV-01691-AGF, 2013 WL 4855304, at *8 (E.D. Mo. Sept. 11, 2013) (awarding attorneys' fees at $500 per hour for lead counsel in class action under the Fair and Accurate Credit Transactions Act); *United States ex rel. Joe Liotine v. CDW-Government, Inc.*, No. 3:05-CV-00033-DRH-PMF, 2013 WL

11267176, at *11 (S.D. Ill. May 17, 2013) (awarding attorneys' fees at $525 per hour for senior partners in False Claims Act case); *Holland v. City of Gerald, Mo.*, No. 4:08-CV-707-HEA, 2013 WL 1688300, at *4 (E.D. Mo. Apr. 18, 2013) (awarding attorneys' fees at $450 per hour for partners in civil rights litigation); *Wilfong v. Rent-A-Center*, 2002 U.S. Dist. LEXIS 28016, *1 (S.D. Ill. Oct. 4, 2002) (awarding attorneys' fees at $400 per hour for partners in employment discrimination class action).  The court is also mindful that this court has awarded the higher requested rates in similar cases.  *See Thomas*, 2014 WL 1347221, at *4; *Adkins*, No. 09-503L (Opinion on Fees and Costs, ECF No. 140, filed Jan. 30, 2014); and *Gregory*, 110 Fed. Cl. at 406.  Thus, the hourly rates awarded are $475 for partners, $275 for associates, and $150 to $175 for paralegals for time billed on January 1, 2011 forward.

### 2.    Hours

Plaintiffs bear the burden of proving that the number of hours submitted for payment is reasonable and should not include hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434, 437.  Plaintiffs request an award of fees associated with more than 1,174.50 hours of attorney time, including: (1) 911.8 hours of work class counsel performed up to August 31, 2016, the date the parties filed a joint status report (ECF No. 70) requesting that the court set a briefing schedule for plaintiffs' motion for attorneys' fees; (2) 191.8 hours of work on plaintiffs' initial fee motion and reply; (3) 70.9 hours of work class counsel performed after August 31, 2016 on other "matters necessary to the litigation," including "additional class management and preparation of the recent motion and reply in support of preliminary approval of the

class action settlement"; and (4) additional hours class counsel spent or will spend closing this case.  The government asserts that plaintiffs' requested number of hours is unreasonable.  Below the court addresses in turn each category of disputed hours.

### a.  Prior to Filing the Complaint

The government argues that the court should exclude 62.7 hours class counsel spent on what the government characterizes as non-reimbursable client development and background research activities, consisting of 32.0 partner hours, 20.8 associate hours, and 9.9 paralegal hours.

Plaintiffs argue that they are entitled to reimbursement for all of the hours class counsel spent investigating and building the class members' claims prior to the filing of the complaint in this case, which plaintiffs assert are not non-reimbursable "client development" activities.

The court agrees with plaintiffs that class counsel's work investigating plaintiffs' claims, establishing the facts necessary to file a case on behalf of a class, prior to the filing of the complaint was not client development but necessary to ensure proper property claims and critical to every plaintiff achieving an award in this case.  Plaintiffs have provided the court with detailed entries regarding the work performed in order to file the complaint.  This court has found that while hours spent on client development are not the type of hours that are typically billed to a paying client, and therefore should be excluded from a reimbursement request, the URA allows for reimbursement of a reasonable number of hours spent preparing a complaint.  *See Thomas*, 2014 WL

1347221, at *2.  The court finds the hours spent in preparing the complaint are reimbursable.

### b.  Vague Descriptions

The government objects to plaintiffs' request for fees associated with 3.6 hours class counsel spent on vaguely described activities, consisting of 2 partner hours and 1.6 associate hours.  Plaintiffs assert that the contested time entries related to case strategy and investigation are sufficiently detailed, even though no specific client is identified, and should be fully reimbursable.

"Where the documentation of hours is inadequate, the . . . court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433.  After reviewing the time entries at issue, the court finds that plaintiffs may not be reimbursed for fees associated with the 2 hours class counsel spent on "[r]eview and planning" of the case and "[w]ork on strategy."  *See Thomas*, 2014 WL 1347221, at *4 (finding that hours represented by similar entries were not reimbursable because the entries were too vague and appeared to be covered by other hours plaintiffs claimed).  The remaining 1.6 hours for "[i]nvestigate and analyze class members' claims" are reimbursable.  *Id.*

### c.  Travel

The government contends that plaintiffs' request for fees associated with travel time should be reduced.  The government argues that 68.8 hours of travel time, consisting of 19 hours of partner time and 49.8 hours of associate time, should be reduced by 50% in light of case law reducing the amount a prevailing plaintiff can recover for an

attorney's travel time on the grounds that while traveling the attorney was not otherwise working on client-billable tasks.[2]

Plaintiffs argue that because nearly all of the travel in this case was by car, foreclosing the possibility of class counsel doing any other work, those hours should be reimbursable in full.

The court agrees with plaintiffs that they are entitled to attorneys' fees associated with hours class counsel spent traveling.  Plaintiffs rely on *Crumbaker v. Merit Systems Protection Board*, 781 F.2d 191, 193 (Fed. Cir. 1986), *modified on other grounds*, 827 F.2d 761 (Fed. Cir. 1987), to support their position that class counsel's travel time should be fully reimbursed.  In *Crumbaker*, the Federal Circuit found that the appropriate billing rate for time spent traveling "is the same billing rate as would be appropriate for the other time the lawyers put in on the case." *Id.* (quoting *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984)).  The Federal Circuit adopted the Seventh Circuit's reasoning that "[w]hen a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling." *Id.* (quoting *Henry*, 788 F.2d at 194).  However, the Federal Circuit noted that unnecessary or unreasonable travel time "should be subtracted out." *Id.* (quoting *Henry*, 788 F.2d at

---

[2] The government also argues that 6.8 partner hours for "[p]reparation for research at [the National Archives and Records Administration ("NARA")] and travel to College Park, MD" on June 23, 2009 should be eliminated on the grounds that it was non-compensable client development and background research activity.  Plaintiffs note that as part of the verification of individual claims and work with title documents and issues, class counsel identified and obtained "[v]aluation maps showing the original source conveyances . . . from the National Archives in College Park, Maryland," which "were then electronically digitized and overlain on parcel maps created by Plaintiffs' Counsel." Pls.' Fees Mot. 10.  For the reasons above, the court agrees with plaintiffs that this work prior to the filing of the complaint is reimbursable.

194).  Therefore, attorney travel time may be fully compensable but plaintiffs must still show that the requested hours are reasonable.  The court agrees with plaintiffs that the hours class counsel spent travelling were reasonable and therefore reimbursable.  *See id.* In this case, because the transit time was spent driving, it would not have been possible for class counsel to work while in transit and thus they are entitled to their fees while in transit.

### d.  Hours Spent on Unsuccessful Arguments Regarding Plaintiffs' Proposed Notice to Class Members and Plaintiffs' Motion for Fees and Costs

The government asserts that plaintiffs' request should be reduced by 11.9 hours on the grounds that the court did not adopt plaintiffs' version of the notice to class members regarding the proposed class action settlement.  The government also argues that plaintiffs should not be allowed to recover attorneys' fees associated with any of the 191.8 hours class counsel spent on plaintiffs' fees motion, or at least the time spent on unsuccessful arguments.  The government identifies 11 additional hours it claims should be characterized as pertaining to plaintiffs' fees motion and should be excluded on that basis.

The court agrees with the government that plaintiffs may not recover fees associated with time spent on unsuccessful arguments.  This court may eliminate hours or reduce an award "based on the degree of success obtained."  *Biery*, 818 F.3d at 712. First, plaintiffs' requested hours for time class counsel spent on plaintiffs' fees motion and reply in support of the motion are not all reimbursable.  Plaintiffs initially proposed that class counsel could collect contingent fees pursuant to agreements with four class

members or treat the settlement as a common fund and recover an unspecified contingent fee.  However, plaintiffs withdrew the request for contingent fees pursuant to the agreements with four class members.  *See* Pls.' Reply in Support of Fees Mot. 1 (ECF No. 85).  Plaintiffs also initially requested that the court apply the "common fund doctrine," which the court found was foreclosed by the Federal Circuit's decision in *Haggart*, 809 F.3d at 1354-59.  *See* Order on Plaintiffs' "Notice Regarding Class Counsel's Position" (ECF No. 89, filed Jan. 30, 2017).  Therefore, plaintiffs' requested hours for time class counsel spent on these arguments must be eliminated.

In addition, the court agrees with the government that plaintiffs' requested hours should be reduced to reflect their partial success with regard to the parties' disagreement about which notice and forms to use to inform class members of the proposed settlement in this case.  The court approved the government's version of the notice and forms with the exception of references to a proposed website and the references to class counsel's request for contingent fees.  *See* Order Granting Preliminary Approval to Parties' Proposed Settlement and Notice Forms to Class Members and Scheduling a Public Fairness Hearing 3-5 (ECF No. 86, filed Jan. 25, 2017).  Plaintiffs' requested hours should be reduced by 50% for this work because class counsel could have objected only to the government's proposal to create a website and thus saved time spent briefing other issues regarding the adequacy of their proposed notice.  Plaintiffs are entitled to their fees and costs for this round of briefing on fees and costs for continuing litigation and the court understands that those amounts may need to be recalculated.

### 3. Notice was Directed to Class Members as Required by RCFC 23(h)

Finally, as discussed above, the court finds that the government's contention raised for the first time at the fairness hearing regarding plaintiffs' compliance with RCFC 23(h) must be rejected. RCFC 23(h) sets out the following procedures for approving a motion for attorneys' fees and nontaxable costs:

> (1) A claim for an award must be made by motion under RCFC 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

> (2) A class member, or party from whom payment is sought, may object to the motion.

> (3) The court may hold a hearing and must find the facts and state its legal conclusions under RCFC 52(a).

RCFC 23(h).

At the hearing, plaintiffs' counsel argued that RCFC 23(h) only requires that "[n]otice of the motion," not actual copies of the motion and related filings, "must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner," and that the notice sent to class members more than satisfied that requirement. The court agrees. As detailed above, the notice and forms provided to class members expressly identified plaintiffs' motion for attorneys' fees and costs and provided an opportunity to "request additional information regarding the proposed settlement from Class Counsel, including . . . the Parties' filings on Class Counsel's motion for attorney's fees." *E.g.*, ECF No. 87-1 at 2. In *Haggart*, the Federal Circuit noted that "[c]ourts have approved notices that did not contain some of the precise details

of the settlement, such as the distribution or allocation plan, or the amount of attorney

fees to be taken out, as long as sufficient contact information is provided to allow the

class members to obtain more detailed information about those matters." 809 F.3d at

1348 (quoting Charles A. Wright & Arthur R. Miller, Settlement, Voluntary Dismissal, or

Compromise of Class Actions—Settlement Notice, 7B Fed. Prac. & Proc. Civ. § 1797.6

(3d ed. 2004)). Similarly, the Advisory Committee notes regarding the analogous notice

requirement under Rule 23(h)(1) of the Federal Rules of Civil Procedure state:

> Besides service of the motion on all parties, notice of class counsel's
> motion for attorney fees must be 'directed to the class in a reasonable
> manner.' Because members of the class have an interest in the
> arrangements for payment of class counsel whether that payment comes
> from the class fund or is made directly by another party, notice is required
> in all instances. In cases in which settlement approval is contemplated
> under Rule 23(e), notice of class counsel's fee motion should be combined
> with notice of the proposed settlement, and the provision regarding notice
> to the class is parallel to the requirements for notice under Rule 23(e). In
> adjudicated class actions, the court may calibrate the notice to avoid undue
> expense.

In this case, the notice and forms sent to class members regarding the proposed

settlement, which were based on the government's proposed notice and forms, expressly

discussed plaintiffs' motion for attorneys' fees and costs. The notice and forms included

information about plaintiffs' motion for attorneys' fees and costs and provided class

members an opportunity to obtain copies of the parties' filings from class counsel. The

notice and forms also provided class members the opportunity to object or comment on

plaintiffs' motion for attorneys' fees and costs in writing and at the fairness hearing.

Therefore, the court finds that the requirements of RCFC 23(h) have been met and thus a

ruling on attorneys' fees and costs is appropriate.

**III.     CONCLUSION**

For the reasons above, the parties' proposed settlement is **APPROVED**.  Because there is no just reason for delay, the clerk is directed to enter judgment pursuant to RCFC 54(b) in the amount of $611,795.00 in principal apportioned among the plaintiffs as shown in the table attached to this opinion.  Interest shall be payable on these amounts at a rate of 4.3 percent, compounded annually, beginning on May 24, 2004, until the date the judgment is paid.

Plaintiffs' motion for attorneys' fees and costs is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The parties shall have until **April 24, 2017** to file a joint status report with a final proposed judgment for attorneys' fees and costs.

**IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge

**EXHIBIT B**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ROSALIE GREENWOOD, *et al.*, | ) | |
| Individually and As Representatives of a | ) | |
| Class of Similarly Situated Individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 10-15 L |
| | ) | |
| v. | ) | Judge Nancy B. Firestone |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT COMPROMISE SETTLEMENT AGREEMENT BETWEEN
PLAINTIFFS AND THE UNITED STATES**

WHEREAS, the Plaintiffs identified in the original and amended complaints (collectively "Complaint") and the Class Members who joined this action (collectively "Plaintiffs") brought claims pursuant to the Tucker Act, 28 U.S.C. § 1491(a), the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act"), and the Fifth Amendment to the Constitution, seeking just compensation for the alleged taking of their ownership interests in a railroad corridor located between milepost 397.78 in Hoxie and milepost 402.28 in Walport, as well as the 2.20-mile Walnut Ridge Industrial Spur, all in Lawrence County, Arkansas ("the subject corridor");

WHEREAS, the United States answered Plaintiffs' Complaint, denying that it had taken Plaintiffs' property;

WHEREAS, on May 24, 2004, the Surface Transportation Board ("STB") issued a decision and notice of interim trail use for the subject corridor in accordance with Section 8(d) of the Trails Act, 16 U.S.C. § 1247(d) ("the STB decision");

WHEREAS, in accordance with the STB decision, on or about May 17, 2005, the Burlington Northern Santa Fe Company, pursuant to a Trail Use Agreement entered into with

Lawrence County, Arkansas, conveyed the subject corridor to Lawrence County for railbanking and interim trail use;

WHEREAS, the parties have engaged in good faith settlement negotiations in an effort to avoid the time and expense of further litigation;

AND WHEREAS, Rule 23(e) of the Rules of the United States Court of Federal Claims requires that the Court approve proposals to settle the claims in a certified class action under procedures specified in that rule and, following notice to the class and a hearing, the Court has approved the settlement by its order of [date];

NOW THEREFORE, it is stipulated and agreed to by Plaintiffs and the United States as follows:

1.      The alleged date of taking in this case, which is the date on which Plaintiffs' claims against the United States accrued, is May 24, 2004.

2.      This Joint Compromise Settlement Agreement contains the complete and total terms and conditions of the parties' agreement, and encompasses all existing claims, disputed issues and/or demands for money damages or other relief – not including attorneys' fees, and other litigation expenses – that were asserted or could have been asserted in this action or in any other judicial proceeding, against the United States or any department, agency, or officer thereof, by Plaintiffs relating to the parcels of land for which compensation was sought in the Complaint.

3.      The Plaintiffs identified in Attachment A are or were owners of certain parcels of property situated in Lawrence County, Arkansas on the date of the alleged taking who will receive compensation in settlement of their claims.

- 2 -

4.      The United States hereby agrees, by way of compromise and settlement, to pay to the Plaintiffs $1,025,595.00.  This amount consists of $611,795.00 in principal, and $413,800.00 in interest, calculated at a rate of 4.3 percent, compounded annually, beginning on May 24, 2004 (with the final amount to be determined in accordance with paragraph 6).  The amount of principal and interest to be paid for each Plaintiff's individual claim is specified in Attachment A.  The total sum of $1,025,595.00 does not include reimbursement to Plaintiffs for statutory attorneys' fees and litigation costs under the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA") of 1970, 42 U.S.C. § 4654(c).

5.      The amount of statutory attorneys' fees and litigation costs under the URA has not been resolved.  The Plaintiffs' claims for fees and costs against the United States will be resolved by Court order or further settlement between the Parties.

6.      The calculated interest stated in paragraph 4 is the total interest accrued as of August 31, 2016.  The parties agree that interest will be recalculated based upon the U.S. Department of the Treasury's estimated date of actual payment, using the same method of interest computation employed for the estimated interest amount stated in paragraph 4.

7.      In accordance and consistent with the terms of this Joint Compromise Settlement Agreement, and in accordance with the Trails Act, 16 U.S.C. § 1247(d), the segments of the railroad corridor that are at issue in this case have been railbanked and are therefore encumbered by an easement that allows the land to be used for interim trail use, for restoration and/or reconstruction of the railroad right of way for future rail service, and for rail service.

8.      In consideration of the settlement amount set forth in paragraph 4 and in order to fully and finally resolve all claims of property damages and interest arising out of all matters which

the Plaintiffs have asserted or could have asserted in this civil action, Plaintiffs agree to dismiss all claims of property damages and interest with prejudice within 14 days of receipt of payment from the United States pursuant to Court of Federal Claims Rule 41(a)(1)(A)(ii).

9.      Plaintiffs understand and acknowledge that this settlement will be submitted by the United States to the Department of the Treasury for payment.  Plaintiffs have been informed that the Department of the Treasury requires each Plaintiff receiving a portion of the total settlement to provide their Social Security Number or federal Taxpayer Identification Number prior to processing payment, so that the Department of the Treasury may fulfill its statutory obligations under the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3325(d)).

10.     This Joint Compromise Settlement Agreement shall not be construed as (A) an admission by Defendant of any legal or specific monetary liability as to any or all of Plaintiffs' claims for moneys, attorneys' fees, litigation costs and other expenses, interest, any other kind of monetary relief or compensation, or any other kind of legal or equitable relief; nor (B) an admission by Plaintiffs of the merits of Defendant's defenses, claims, or assertions.

11.     This Joint Compromise Settlement Agreement shall not be interpreted to constitute a precedent or argument in this or any other case.

12.     This Joint Compromise Settlement Agreement shall be binding on the Plaintiffs and the United States, all of their related and affiliated companies and persons, and their successors and assigns.

12.     The parties agree that this Joint Compromise Settlement Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which, taken

together, shall constitute one and the same instrument.  Facsimile or scanned signatures transmitted by electronic mail shall have the same effect as original signatures in binding the parties.

IN WITNESS THEREOF, this Joint Compromise Settlement Agreement between the Plaintiffs and the United States has been duly executed by their authorized legal representatives.

STEWART, WALD & MCCULLEY, L.L.C.

   DRAFT
Steven M. Wald
Michael J. Smith
12747 Olive Boulevard, Suite 280
St. Louis, MO 63141
(314) 720-0220 (phone)
(314) 889-2925 (fax)
wald@swm.legal
smith@swm.legal

-and-

Thomas S. Stewart
Elizabeth G. McCulley
2100 Central, Suite 22
Kansas City, MO  64108
Telephone: (816) 303-1500
Facsimile: (816) 527-8068
stewart@swm.legal
mcculley@swm.legal

-and-

Baker Sterchi Cowden & Rice, L.L.C.
J. Robert Sears
1010 Market Street, Suite 950
St. Louis, MO  63102-1708
(314) 231-2925 (phone)
(314) 231-4875 (fax)
sears@bscr-law.com

ATTORNEYS FOR PLAINTIFFS

Dated:   DRAFT

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division

   DRAFT
Sean C. Duffy
Trial Attorney
Natural Resources Section
P. O. Box 7611
Washington, DC 20044-7611
(202) 305-0445 (phone)
(202) 305-0506 (fax)
sean.c.duffy@usdoj.gov

ATTORNEY OF RECORD FOR
DEFENDANT AND AUTHORIZED
REPRESENTATIVE OF THE ATTORNEY
GENERAL

Dated:   DRAFT

Attachment A

| Claimant | Property Damages[1] |
|---|---|
| Alvie & Bonnie Cain, Jr. | $      5,250.00 |
| Archie J. Harden | $     12,450.00 |
| Archie L. Williams, Jr. | $     16,012.50 |
| Aycock Auto World, Inc. | $     13,750.00 |
| Barbara Davidson | $      5,962.50 |
| Bobby L. Jackson | $     21,012.50 |
| Calvin C. & Yvonne D. Ellison | $      4,717.50 |
| City of Walnut Ridge, | $    114,087.50 |
| Conway Inn Corporation | $     11,273.50 |
| Craig G. Williams Farms, Inc. | $     11,842.25 |
| Daniel and Martha Webb | $      5,810.00 |
| Denning Family Trust | $      1,788.50 |
| Donald G. Rorex | $      7,437.50 |
| Donnie and Denise Milgrim | $      4,650.00 |
| E.C. Barton & Company | $     30,600.00 |
| Earl B Sloan, Jr. Revocable Trust | $     16,325.00 |
| Estate of Agnes Parker-Hibbs | $      4,760.00 |
| Estate of Betty Ragsdale | $      3,605.00 |

---

[1] Each Plaintiff listed in Attachment A is also entitled to interest, at a flat rate of 4.3%, between May 24, 2004 and the date of payment.

Attachment A

| | | |
|---|---|---|
| Estate of Kenneth and Wanda McEntire | $ | 20,187.50 |
| Estate of Liberty Pulliam | $ | 7,125.00 |
| Estate of Mary Jo Higginbotham | $ | 11,500.00 |
| Estate of Regina Lynn Boggs, f.k.a Warren | $ | 5,250.00 |
| Estate of William Walter McGhehey | $ | 3,990.00 |
| Esther J. Presnell Floyd | $ | 1,750.00 |
| Farm Service Inc. | $ | 48,300.00 |
| G.A.W. Partnership | $ | 31,867.50 |
| Imogene Hancock | $ | 5,250.00 |
| Jerry F. Murphy | $ | 4,375.00 |
| Jessie L. and Tina Walker | $ | 6,975.00 |
| John D. and R. Joan Bradley | $ | 5,110.00 |
| John Eugene Dauck | $ | 3,375.00 |
| John K. and DeanaHouseholder | $ | 6,375.00 |
| Kimeth Gardner | $ | 8,797.50 |
| Leota Warner | $ | 5,700.00 |
| Neal W. Hall | $ | 1,750.00 |
| Neil S. Raney Trust | $ | 1,526.00 |
| Paul and Rhonda Forrester | $ | 42,525.00 |
| Randy K. Floyd | $ | 1,750.00 |
| Rankin Investments, LLC | $ | 6,600.00 |

Attachment A

| | | |
|---|---|---|
| Robert Lee Higginbotham | $ | 2,550.00 |
| Robert W. Allen | $ | 14,025.00 |
| Ronnie L. and Brenda K. Brady | $ | 2,295.00 |
| Rosalie Greenwood | $ | 2,550.00 |
| Sara S. Heckle Living Trust | $ | 17,183.25 |
| Sharon Elliott | $ | 1,875.00 |
| Ted and Diane Heard | $ | 4,900.00 |
| Teresa Hibbard | $ | 5,062.50 |
| The Robert T. and Jewel D. Cathcart Trust | $ | 12,712.50 |
| Thomas D. and Linda F. Ellis | $ | 3,916.50 |
| Tommy L. and Barbara A. Rankin | $ | 4,450.00 |
| Tyrone and Judy Berry | $ | 8,712.50 |
| Village Creek Drainage District | $ | 5,625.00 |
| W.R.W. OIL CO., INC. | $ | 4,525.00 |
| **Total** | | **$611,795.00** |